## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

**GEORGE WILLIAMS,**

*Defendant-Movant,*

v.

**UNITED STATES OF AMERICA,**

*Plaintiff-Respondent.*

**Case No. 5:16-cr-433-RCL**

**FILED UNDER SEAL**

## MEMORANDUM OPINION

On April 21, 2017, defendant-movant George Williams pleaded guilty to conspiring to distribute and possess with intent to distribute methamphetamine ("meth") and cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B). Indictment at 1, ECF No. 24; Hearing Tr. at 5:4-8, ECF No. 153. After filing and withdrawing an appeal to the Fifth Circuit, Williams submitted his present motion *pro se* under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Mot., ECF No. 157; Judgment, ECF No. 156. Williams now says that he was prejudiced by his original counsel's alleged ineffectiveness during his plea negotiations and sentencing. Mot. at 3–12, ECF No. 157. The government's opposition disputes those claims, but it also falsely asserted that Williams waived his right to collateral attacks in his plea agreement, and it failed to address one of Williams's grounds for relief. Response at 5–6, ECF No. 161; *cf.* Plea Agreement at 8, ECF No. 94. In response, the Court ordered supplemental briefing on those issues and appointed Williams counsel. Mem. Order, ECF No. 162; Order, ECF No. 165. The government then filed its supplemental brief, ECF No. 164, Williams his reply, ECF No. 172, and the government a response to that reply, ECF No. 173. Having considered the briefs and the record, the Court will now **DENY** Williams's motion for the reasons discussed below.

## I.     BACKGROUND

In May 2016, law enforcement deployed a confidential source ("CS") to record phone conversations between the CS and Williams, in which Williams orchestrated multiple drug transactions. Plea Agreement at 9, ECF No. 94. On May 16, Williams agreed to provide two pounds of crystal meth to the CS for a later payment of $9,000. *Id.* Williams instructed the CS to wait at a Dollar General in Luling, Texas, for Williams's cousin, Thomas Rodriguez, to deliver the drugs. *Id.* After Rodriguez did so, law enforcement seized the package and determined that it contained 846 grams of meth, at a purity of 43%. *Id.* at 9–10.

On May 16, Williams agreed, again, to provide one pound of crystal meth to the CS up front for a later payment. *Id.* at 10. Williams instructed the CS that during the second transaction, the CS could pay the $9,000 outstanding for the first transaction. *Id.* The CS parked at the Dollar General, and Rodriguez arrived a short time later. *Id.* Rodriguez entered the CS's vehicle, counted and took the money, gave the CS the second bag of drugs, and left the scene. *Id.* Law enforcement then seized the bag and determined that it contained 287 grams of meth, at a purity of 86%. *Id.*

On June 1, 2016, the same CS recorded another conservation between himself and Williams, in which Williams advised that he had recently received a shipment of cocaine. *Id.* Williams offered to sell the CS a kilogram for $27,000. *Id.* The CS agreed, and Williams directed him to drive to a Buc-ee's gas station in New Braunfels, Texas. *Id.* The CS asked Williams for another two kilograms of cocaine up front, and he offered to pay for four kilograms in total at the upcoming transaction. *Id.* (The two other kilograms would be exchanged in a later transaction). *Id.* Williams agreed and instructed the CS to wait for Rodriguez. *Id.* Soon after, Rodriguez and an associate, Perry Lux, met with the CS. *Id.* After taking the CS's $27,000, Rodriguez instructed Lux to hand the CS a backpack. *Id.* at 11. Lux and Rodriguez then left the gas station. *Id.* When

law enforcement officers seized the backpack, they determined that it contained 1,985 grams of cocaine. *Id.*

On June 15, 2016, a federal grand jury indicted Williams, Rodriguez, and Lux for several offenses. Indictment, ECF No. 24. Williams, specifically, was charged with two counts of violating 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B) for the meth offenses, one count of violating 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A) for the cocaine offense, and one count of violating 21 U.S.C. §§ 846, 841(b)(1)(A) & 841(b)(1)(B) for conspiracy to commit those offenses. *Id.* at 1–3. Because of Williams's prior drug felony convictions, the government filed a notice that Williams was subject to 21 U.S.C. §§ 841(b)(1)(A) & 851's enhanced penalty provisions. Penalty Enhancement, ECF No. 91. These penalties included a fine of up to $8 million and a mandatory term of life imprisonment. *Id.* at 1.

Given those stiff consequences, Williams retained counsel and negotiated a plea agreement. On April 11, 2017, Williams agreed to plead guilty to Count One of the indictment—conspiracy to distribute and possess with intent to distribute meth and cocaine—in exchange for the government dropping the other charges. Plea Agreement at 16, ECF No. 94. The government also agreed that it would no longer seek a mandatory life sentence. *Id.* at 12. Williams's plea relinquished most avenues to collaterally attack his impending conviction and sentence, but Williams expressly reserved "his right to challenge his sentence . . . based on claims of ineffective assistance of counsel." *Id.* at 8. On April 21, 2017, Williams pleaded guilty in open court before a magistrate judge. Hearing Tr. at 5:4–8, ECF No. 153.

Prior to Williams's sentencing for that conviction, the Probation Office prepared a Presentence Investigation Report (PSR) that detailed Williams's offense and his other criminal history. PSR, ECF No. 119. The PSR writer calculated that Williams had "a total offense level of

33 and a criminal history category of V." *Id.* at 13. The Sentencing Guidelines, therefore, suggested an imprisonment range of 210 to 262 months. *Id.* Because the statutorily authorized maximum sentence for Williams's offense was only 20 years, however, his corrected Guidelines range became 210 to 240 months. *Id.*

Williams's retained counsel filed two objections to the PSR with the Probation Office. Second Addendum, ECF No. 137; *see also* Objections, ECF Nos. 161-2 & 161-2. First, Williams's counsel argued that the PSR improperly calculated the amount of meth involved in the first transaction with the CS. *Id.* Because the 846 grams tested at a purity of only 43%, the PSR writer tabulated that it was equivalent to 363.78 grams of "actual" (i.e., pure) meth, and she based Williams's offense level on the "actual" figure. PSR at 4, ECF No. 119. Doing so increased Williams's offense level beyond what it would have been had the PSR relied on the weight of the mixture itself—846 grams. Second Addendum, ECF No. 137. But the PSR writer pointed out, correctly, that the Guidelines prescribe whichever method results in the "greater" offense level, and she requested that the Court rule on the dispute at sentencing. *Id.*; *cf.* United States Sentencing Commission, *Guidelines Manual* § 2D1.1 (2016) ("In the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), *whichever is greater*.") (emphasis added).[1]

Second, Williams's counsel argued that Williams should not have received three additional criminal history points for his two convictions listed at Paragraphs 27 and 28 of the PSR, i.e., his December 14, 2006 and July 23, 2007 convictions for possession of a controlled substance. Second

---

[1] The Court refers to the 2016 *Guidelines Manual*, which remained in effect through October 31, 2018, and thus was in effect when the Probation Office compiled Williams's PSR. *See 2016 Guidelines Manual*, United States Sentencing Commission, https://www.ussc.gov/guidelines/2016-guidelines-manual.

Addendum, ECF No. 137. She contended that "they should be considered related cases to the conviction in Paragraph 25," i.e., his March 17, 2004 conviction for possession of a controlled substance. *Id.*; *cf.* PSR at 6–7, ECF No. 119. The PSR writer responded that the Sentencing Guidelines explain that "prior sentences are always counted separately if the sentences were imposed for offenses that were separated by intervening arrests." Second Addendum, ECF No. 137; *cf. Sentencing Guidelines*, § 4A1.2(a)(2). The PSR writer then asserted that Williams experienced an intervening arrest—on January 20, 2007—for the drug offense that led to the July 23, 2007 conviction mentioned above. Second Addendum, ECF No. 137. On that basis, the PSR writer maintained that it was proper to count the sentences separately, and thus to increase Williams's criminal history score on that basis. *Id.* The PSR writer requested that the Court rule on that issue at sentencing, too. *Id.* So as the PSR stood on the eve of sentencing, it suggested that Williams's total offense level was V, his criminal history level 33, and his Guidelines range 210–240 months' imprisonment.



At Williams's February 23, 2018 sentencing, his counsel renewed her objections to the PSR's calculation of the drug quantity and criminal history. Hearing Tr. at 2:22-3:16, ECF No. 154. The Court considered and rejected those objections, finding that the PSR properly calculated both figures. *Id.* at 3:8-18. Williams's counsel stated that she had no further objections.

*Id.* at 3:16-17. The Court, therefore, adopted the PSR's total offense level of 33, criminal history of Category V, and Guidelines range of 210–240 months. *Id.* at 3:19-22. After accepting Williams's plea and considering the 18 U.S.C. § 3553(a) factors, the Court sentenced Williams to 180 months' imprisonment. *Id.* at 9:23–10:2.

On March 26, 2018, Williams lodged an appeal in the U.S. Court of Appeals for the Fifth Circuit and was appointed counsel, but he withdrew that appeal on September 20, 2018. Order, ECF No. 144; Mandate, ECF No. 156. Then, on September 3, 2019, he filed his present motion *pro se* under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Mot., ECF No. 157. The government concedes that Williams's motion was "timely filed," and this Court agrees with that concession upon its independent review. Mot. at 1, ECF No. 161; *cf. Day v. McDonough*, 547 U.S. 198, 209 (2006); *Shelton v. United States*, 800 F.2d 292, 294 (6th Cir. 2015) (extending *Day* to the § 2255 context).

Williams now challenges his conviction and sentence on four grounds, all of which, he argues, fall under the rubric of ineffective assistance of counsel. Mot. at 16–24, ECF No. 157. First, Williams argues that he was never actually arrested on January 20, 2007, "because he was in jail at that time and had been for at least 30 days prior to the alleged arrest." *Id.* at 16. He argues that a reasonable investigation by his counsel would have revealed that fact, and thus that he should not have received three additional points on his criminal history score. *Id.*; Reply to Response at 4–5, ECF No. 172. Second, he argues that his counsel failed to challenge the PSR's claim that his first drug transaction involved 363.78 grams of "actual" meth, rather than 846 grams of "mixture," which increased his total offense level. Mot. at 18, ECF No. 157. Third, he argues that counsel failed to contest his leadership role in the conspiracy, for which he received another two-point increase in his offense level. *Id.* at 20. Fourth and last, Williams argues that his counsel improperly

induced him to plead guilty with a promise that he would receive less than fifteen years' imprisonment—which did not occur—if he paid her $1,000. *Id.* at 21–24.

The government's response addressed some of those arguments, but not others. *See* Mem. Order at 1, ECF No. 162. Though it noted that Williams's counsel *did* dispute the three-point increase to his criminal history, it failed to address whether Williams had actually been arrested on January 20, 2007, or instead was already in custody, as Williams claims. *Id.* And it also asserted that Williams, in his plea agreement, had "expressly waived his right to collaterally attack his conviction and sentence." Response at 5–6, ECF No. 161. But that was false. Williams had expressly *reserved* his right to mount challenges based on ineffective assistance of counsel—the precise nature of his present claims. Plea Agreement at 8, ECF No. 94. In response to those deficiencies, the Court appointed counsel to assist Williams with his motion and ordered supplemental briefing on whether Williams's disputed arrest had actually occurred. Mem. Order at 1–2, ECF No. 162.

As part of its supplemental briefing, the government located and attached the relevant records of Williams's state and local arrests, indictments, and convictions. *See* ECF Nos. 164-1–164-9. These revealed that Williams—just as he had claimed—was never arrested on January 20, 2007. Supp. Mot. at 3, ECF No. 164. But that was *not* because Williams was in jail at the time, as he maintains. Mot. at 16, ECF No. 157. Rather, he was out of custody on an appeal bond following his conviction on December 14, 2006, for felony and misdemeanor unlawful restraint. Judgment, ECF No. 164-3; Prison Jail Record, ECF No. 164-4 (noting Williams's release from custody on December 18, 2006). Ironically, far from being arrested, Williams used his freedom to commit another drug crime on the date in dispute—January 20, 2007—for which he was later indicted by a Texas grand jury. Indictment at 2, ECF No. 164-5. So Williams's PSR *was* incorrect, as the

government concedes, just not for the reason Williams initially said. Supp. Response at 2, ECF No. 164. He was not in custody on January 20, 2007, but he was not arrested that day either. So his December 2006 and March 2007 convictions indeed "should have been counted as a single sentence" in the PSR. *Id.* at 4. And thus, the PSR's failure to do so "overstated [Williams's] criminal history points as a result." *Id.*

Williams's reply brief contends that this error was prejudicial. Reply to Response at 4, ECF No. 172. He points out that the original PSR, with its inflated criminal history score, exposed him to a Guidelines range of 210–240 months. *Id.* But his true Guidelines range, based on the correct criminal history score of Category IV, should have been 188–235 months. *Id.* He argues that a reasonable investigation by his counsel would have uncovered that fact. *Id.* at 4–5. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The government's response argues that Williams's original counsel was not ineffective despite failing to discover the spurious arrest, and that Williams was not prejudiced even if that failure amounted to ineffectiveness. The government concedes that the documents "necessary to determine that the PSR was incorrect [were] available at the time of sentencing." Response to Reply at 2, ECF No. 173. But it argues that Williams's counsel still made the "ultimately correct argument" that the PSR's criminal history score was wrong, even if she did not contemporaneously understand the correct rationale. *Id.* As to prejudice, the government points out that Williams's sentence—180 months—was lower than even the corrected Guidelines range. *Id.* ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Having considered this expansive briefing and the entire record before it, the Court will **DENY** Williams's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons explained below, the Court concludes that three of Williams's arguments—that his original counsel improperly induced him to plead and failed to challenge his leadership role, and that the PSR improperly calculated the amount of meth—are frivolous. And despite Williams's appointed counsel's admirable efforts, the Court agrees with the government that even had the original PSR been accurate, the possibility of an even further downward departure from Williams's ultimate, 180-month sentence is too speculative to warrant the requested relief.

## II.   LEGAL STANDARD

A prisoner in federal custody may attack his sentence under 28 U.S.C. § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2255(a). If the prisoner succeeds in that showing, "the court which [sic] imposed the sentence [may] vacate, set aside[,] or correct" it. *Id.* Claims raised in such collateral attacks that were not raised on direct appeal are ordinarily subject to the rule of "cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). In other words, the movant must provide an excuse for why he failed to raise the claims of error in the earlier proceeding, and he must also show that he was harmed by the errors he now raises. *United States v. Flores*, 981 F.2d 231, 234 (5th Cir. 1993).

Despite that rule's general application to § 2255 motions, the Supreme Court has recognized an exception for claims of ineffective assistance of counsel. *Massaro*, 538 U.S. at 504,

9

508–09. Unlike other claims, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Id.* at 504. Indeed, raising the ineffective-assistance claim through a collateral attack is often "preferable to direct appeal." *Id.* Because trial counsel sometimes becomes appellate counsel, and because even independent appellate counsel often must rely on trial counsel to understand the record below, forcing ineffective-assistance claims into direct appeals could produce "awkward" conflicts of interest. *Id.* at 506. Therefore, "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Id.* at 509.

Ineffective-assistance-of-counsel claims are said to derive from the Sixth Amendment's guarantee to the defendant of "the Assistance of Counsel for his defence." U.S. Const., Amend. VI; *see also Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). Counsel, therefore, must have the requisite "skill and knowledge" to effectively advocate for their clients' best interests. *Strickland*, 466 U.S. at 685. But not every slip or omission by counsel is an error of constitutional magnitude. Rather, counsel's errors rise to the level of ineffective assistance only when they are unsupported by a reasonable strategy and actually prejudiced the defendant. *Id.* at 681, 687; *see also Massaro*, 538 U.S. at 501 ("[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial.") (citing *Strickland*).

In Williams's case, he challenges counsel's conduct at both the guilt phase (with his allegation that counsel improperly induced him to plead) and at the sentencing phase (with his allegations that counsel should have mounted additional challenges to his PSR). The Supreme Court and the Fifth Circuit have extended the *Strickland* standard to those contexts as follows.

With plea bargains, the defendant shows the requisite "prejudice" from counsel's performance only when he shows "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Specifically, to show that counsel wrongly induced him to plead, the defendant must show that he was promised an "actual sentencing benefit," the "exact terms of the alleged promise," "when, where, and by whom" it was made, and any eyewitnesses to the transaction. *Bond v. Dretke*, 384 F.3d 166, 168 (5th Cir. 2004). In the sentencing phase, counsel's errors become prejudicial when they cause even "a minimal amount of additional time in prison." *Glover v. United States*, 531 U.S. 198, 203 (2001); *see also id.* (explaining that "any amount of actual jailtime has Sixth Amendment significance" in a *Strickland* analysis). And there, too, the movant must show a "reasonable probability" that, but for counsel's errors, such additional time would not have ensued. *Lafler v. Cooper*, 556 U.S. 156, 164 (2012).

## III.   DISCUSSION

### 1.   *The Government's Argument that Williams's Motion is Procedurally Barred Because He Did Not Raise His Claims on Direct Appeal is Frivolous*

The government argues that William's motion is procedurally barred because he failed to raise his present claims on direct appeal. Response at 2, ECF No. 161. That argument is frivolous. As explained above, all four of Williams's grounds for relief stem from alleged ineffective assistance of counsel. And as was also explained above, binding Supreme Court precedent dictates that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal *does not bar the claim* from being brought in a later, appropriate proceeding under § 2255." *Massaro*, 538 U.S. at 509 (emphasis added). So having disposed of the government's procedural bar argument, the Court now proceeds to the merits of Williams's motion, addressing each of his four grounds in turn.

2. *Williams's Counsel Did Not Induce Him to Plead Guilty By Falsely Promising*
   *That He Would Receive A Sub-15-Year Sentence If He Paid Her $1,000*

Williams argues that "[c]ounsel induced [him] to plead guilty by guaranteeing petitioner a

sentence of less than 15 years if he pleaded guilty and paid her." Mot. at 21, ECF No. 157. His

sole evidence for this allegation is a text message conversation between his counsel and his fiancé

that occurred *after* he had pleaded guilty.[2] *Id.* at 28–30. The Court reproduces that conversation

below, with original spelling and punctuation:

> [Counsel]: George owes me money on our contract! I'm paying an
> expert for his advice out of my attorneys fees!!!! Pay me so that I
> can keep George from getting 15 fucking years which is what
> probation is suggesting! Do not play games with me! Pay me so I
> can help save gorge time in prison!!!!!
>
> [Fiancé]: First of all that tone is insanely unprofessional! What it
> seems is you're threatening me as if you're not going to do your job?
> Is the $1000 going to minimize his time? And how much time?
>
> [Counsel]: I am going to retain his services so as to help George but
> I need you to help George by paying me for what he hired me to do.
> I have a former federal probation officer giving me assistance but I
> need to pay him so when can you pay me at least $1000? To prepare
> objections to pre sentence report
>
> **Jun 23, 2017,** 11:10 AM
>
> [Fiancé]: He went to court last time unprepared to sign anything,
> under pressure I might add. I need you to discuss with him later
> about the objections to be made. Money is not needed to file for
> objections. As far as his criminal history, shouldn't that have be
> analyzed by you already? He's been asking you for that information.
> Why are things getting worse instead of better? He hired you to help
> ease things and things getting worse it seems. I'm aware you will be
> speaking with him later. After I hear from George and also you to
> get a better understanding of what's being thrown at him and what
> you're going to do to help him. Besides file for "Continuance".
> $6000 later You have visited your client twice and now he has to

---

[2] Though the first three messages do not contain a time-stamp, their content—regarding a challenge to Williams's
PSR—obviously indicates that they occurred post-plea. As discussed below, work did not even begin on the PSR until
*after* Williams had entered his guilty plea. *See* Min. Entry 4/21/2017; ECF No. 101

call you with his emergency minutes. I'm definitely a woman of my
word… show me some results and I'll get the money together.

Mot. at 28–30, ECF No. 157. Williams argues that this exchange shows that his counsel "induced

his guilty plea by guaranteeing him that if she was paid he would receive a sentence less than 15

years and if she was not paid he would receive a much higher sentence." Mot. at 21, ECF No. 157.

And so, he says, counsel wrongly "induced [him] to plead guilty" with that "unkept promise." *Id.*

Of course, Williams's plea agreement directly warned him "that no one, including his

attorney, [could] guarantee the outcome of this case . . . and no one can guarantee what sentence

the Judge may impose if the defendant pleads guilty." Plea Agreement at 4, ECF No. 94.

Williams's coercion argument also directly cuts against his declaration at the plea colloquy that he

was pleading guilty "voluntarily and with full knowledge of the consequences." Hearing Tr. at

8:5–10, ECF No. 153. Statements like those, made under oath and in open court, "carry a strong

presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Accordingly, they

"constitute a formidable barrier in any subsequent collateral proceedings." *Id.*

In his attempt to surmount that barrier, Williams invokes an exception to those principles

whereby a defendant may vitiate a plea if he can show, with specificity, a false promise made by

his counsel that induced a plea agreement the defendant otherwise would not have entered. *See*

*Bond*, 384 F.3d at 168. But as the government points out, Williams has not made that showing.

*See* Response at 9–10, ECF No. 161. First, the text message conversation took place *after* Williams

had already pleaded guilty in April 2017. *Cf.* Hearing Tr. at 1, 5:4-11. The conversation does not

concern Williams's plea, but counsel's potential objections to the PSR during the *sentencing* phase.

Work did not even begin on the PSR the messages discuss until *after* Williams had entered his

guilty plea. *See* Min. Entry 4/21/2017; ECF No. 101 (referring the case to the Probation Office for

preparation of a PSR after Williams's guilty plea earlier that day). So it is not logically possible

13

for a conversation *after* Williams's plea to have *induced* that plea, wrongly or otherwise. *See Induce*, New Oxford American Dictionary (3d ed. 2010) ("[B]ring about or give rise to.").

Second, the messages do not even show "the exact terms of an alleged promise." *Bond*, 384 F.3d at 168. They convey that his counsel needed $1,000 to pay for the services of a former probation officer who was helping her prepare objections to the presentence report. Whether or not counsel ever received those funds, she *did* prepare the very objections in dispute, submit them to the Probation Office, renew them with this Court, and request a sub-fifteen-year term of imprisonment at sentencing. Sentencing Tr. at 2:22–3:15; 7:22-25, ECF No. 154. So no promise was ever "unkept," since counsel's only guarantee was to *make objections* in the attempt to secure a lesser sentence—not of a lesser sentence itself.

And last, the notion that Williams "would not have pleaded guilty and would have insisted on going to trial" but for the text messages is quite dubious. *Hill*, 474 U.S. at 59. Williams, a repeat drug felon, faced mandatory life imprisonment if he were convicted at trial. *See, e.g.*, Enhancement, ECF No. 91. And the evidence of his guilt was overwhelming. He was recorded multiple times orchestrating the drug transactions for which he was indicted. Plea Agreement at 9–11, ECF No. 94. There is no credible argument, then, that Williams would have insisted on a trial but for the messages, and thus they present no basis for relief.

    3.  *Williams's Counsel Did Object to the PSR's Calculation of the Meth Amount, Despite Williams's Claim to the Contrary, and the Objection Was Baseless and Overruled*

William's argument that his "[c]ounsel failed to investigate properly the probation officer's finding of the drug quantity," but instead "simply relied on the probation officer's erroneous findings," directly contradicts the record. Mot. at 18, ECF No. 157. Again, Williams claims he was responsible for 846 grams of "mixture," rather than 363.78 grams of "actual" meth (i.e., the pure

meth contained in the 846-gram mixture at a purity of 43%). *Id.* But Williams's counsel *did* object

to that conclusion. Objection, ECF No. 161-2. She argued, as Williams does now, that because the

mixture had "a purity level of 43%[, it] therefore should not be counted." *Id.* After the Probation

Office overruled her objection, she renewed it with this Court at sentencing. Sentencing Tr. at

2:22-3:15, ECF No. 157. And this Court overruled the objection too, *id.*, because the PSR properly

construed the recommended offense level under the Guidelines. The Guidelines plainly instruct to

choose whichever calculation—mixture or actual—leads to the greater offense level. *See United

States Sentencing Commission, Guidelines Manual* § 2D1.1 (2016) ("In the case of a mixture or

substance containing . . . methamphetamine, use the offense level determined by the entire weight

of the mixture or substance, or ·the offense level determined by the weight of· the . . .

methamphetamine (actual), *whichever is greater*.") (emphasis added). So not only did Williams's

counsel make the precise objection he now claims she omitted, but that objection was incorrect.

Williams, therefore, has not shown that his counsel's performance fell below an objectively

reasonable standard regarding the drug calculation, much less that he was thereby prejudiced. *Cf.

Strickland*, 466 U.S. at 681, 687.

> 4. *Williams's Counsel Did Object to the Enhancement for Williams's Leadership
>    Role in the Offense, Despite Williams's Claim to the Contrary, and the
>    Objection was Baseless and Overruled*

Williams next argues that his counsel "failed to . . . challenge" the enhancement Williams

received for his leadership role in the offense. Mot. at 19, ECF No. 157. Specifically, Williams

received a two-level enhancement under Guidelines § 3B1.1 for his role in recruiting his cousin,

Rodriguez, and for coordinating the buying and selling of the meth and cocaine. Objections, ECF

No. 119-1. Williams now claims that "he never had control over anyone nor was he in control over

property," that Rodriguez "initiated all contacts and sells," and that his attorney's supposed "failure

to make the court aware of [his] position at sentencing" demonstrates her ineffectiveness. Mot. at

20–21, ECF No. 157. But again, the record evidence directly contradicts Williams's claims.

First, Williams's counsel *did* object to that enhancement. Objections at 1, ECF No. 119-1;

Objection, ECF No. 161-1. Indeed, she made precisely the same objection that Williams now

renews. *Id.* ("The defendant objects to the two-level enhancement for leadership role, and asserts

the enhancement does not apply because the conspiracy is limited to three participants, and two of

the participants (Rodriguez and Williams) are equally culpable."). After the Probation Office

rejected those objections, it referred them to the Court for its ruling. *Id.* Williams's counsel then

renewed those objections at sentencing, both orally and in written submissions. Sentencing Tr. at

2:22–3:17. The Court considered and overruled them, since they were as baseless then as they are

now. *Id.* at 4:1-5 ("The Court . . . adopts the factual statements in the presentence report, and

resolves the objections to the report in favor of the probation writer and rejects the objections made

by the defendant.").

Moreover, because those objections were wrong, Williams has suffered no prejudice in any

event. Section 3B1.1 of the then-effective Sentencing Guidelines stated that,

> Based on the defendant's role in the offense, increase the offense
> level as follows:
>
> (a)  If the defendant was an organizer or leader of a criminal
>      activity that involved five or more participants or was
>      otherwise extensive, increase by **4** levels.
>
> (b)  If the defendant was a manager or supervisor (but not an
>      organizer or leader) and the criminal activity involved
>      five or more participants or was otherwise extensive,
>      increase by **3** levels.
>
> (c)  If the defendant was an organizer, leader, manager, or
>      supervisor in any criminal activity other than described in
>      (a) or (b), increase by **2** levels.

*Guidelines Manual, supra*, § 3B1.1. And while the commentary to that provision states that merely *suggesting* commission of a crime does not warrant the adjustment, defendants qualify for it when they serve as "the organizer, leader, manager, or supervisor of one or more other participants" in the conspiracy. *Id.* at nn.2–3.

As explained above, Williams's leadership role in the drug distribution conspiracy was plain. Though his motion now claims that he was Rodriguez's pawn, the truth is, of course, just the opposite. Mot. at 20, ECF No. 157. Williams dictated when and where the drug transactions would occur, the quantity of drugs involved, and the price at which they would be sold. Plea Agreement at 9–11, ECF No. 94. He approved the CS's proposed payment plan and enticed the CS into further transactions with his advisory that he had received a large shipment of cocaine from his supplier. *Id.* When the CS agreed to those exchanges, Williams deployed Rodriguez as his courier, and Rodriguez always happened to show up exactly when, where, and with the drugs Williams said he would. *Id.* And law enforcement caught Williams on tape arranging all of those transactions. *Id.* So even if counsel failed to reasonably perform in her challenge to the leadership enhancement, there was no resultant prejudice, since that enhancement was clearly warranted.

5. *Williams Fails to Establish a "Reasonable Probability" That He Would Have Received a Sentence Even Further Below the Guidelines Had His PSR Not Wrongly Included the Spurious January 20, 2007 Arrest*

Last, Williams argues that his counsel's failure to discover that he had not been arrested on January 20, 2007 was both objectively unreasonable and prejudicial, since if counsel had performed the relevant research to prove the arrest spurious, Williams would not have received another three points on his criminal history score. Mot. at 16, ECF No. 157. The government concedes that the documents "necessary to determine that the PSR was incorrect w[ere] available at the time of sentencing." Response to Reply at 2, ECF No. 173. Williams's counsel's excuse for

17

*not* finding those documents is unclear. But the government argues that Williams's counsel still managed to make the "ultimately correct" objection to the PSR, even if her rationale was wrong or incomplete. *Id.* at 1. And it says that Williams cannot show prejudice in any event, since he received a sentence below even the corrected Guidelines range. *Id.* at 2.

Williams acknowledges that his actual, 180-month sentence was "even below the 'revised range' of 188–235 months" that a corrected PSR would have suggested. Reply to Response at 6, ECF No. 172.



Nothing in the briefing or record, however, suggests that such a further reduction was "reasonably probable," as is required for this Court to deduce actual prejudice from the error in the PSR. *Cf. Lafler*, 556 U.S. at 164. Again, Williams must show a "reasonable probability" that, had counsel discovered the error, Williams would have received a lesser sentence. *Id.* Even if counsel *had* discovered the error, though, it would merely shift Williams's Guidelines range from 210–240 months to 188–235 months. But Williams received a sentence of only 180 months—eight months below even the corrected range.





In imposing its 180-month sentence on Williams, the Court necessarily considered the sentencing factors set forth at 18 U.S.C. § 3553(a) to ensure that Williams's sentence was "sufficient, but not greater than necessary" to serve the purposes set forth in the statute. Sentencing Tr. at 9:23–25; 10:1–2; 11:5–9; *see also* 18 U.S.C. § 3553(a). Those factors require the Court to consider the Sentencing Guidelines, it is true, but they also require the Court to consider a panoply of real-world information about the defendant, including his "history and characteristics," "the seriousness of [his] offense," the need for "deterrence," and the need to "protect the public from further crimes of the defendant." §§ 3553(a)(1) & (2)(A)–(D). So while correcting Williams's PSR would have ameliorated § 3553's Guidelines factor—one of several to be considered—it would have *exacerbated* the severity of Williams's real-world criminal conduct

under the other factors. Indeed, Williams was not in custody on January 20, 2007 *because he was out on bond committing yet another drug felony*. Indictment at 2, ECF No. 164-5. So it turns out that Williams's real-world conduct—evaluated under factors (a)(1) and (a)(2)(A)–(a)(2)(D)—was actually *worse* than was first suspected, rather than better. The possibility that the Court would have imposed a sentence even shorter than Williams's already below-Guidelines sentence had it then known that Williams used his liberty while on bond from one felony conviction to commit another felony is, simply put, remote. Such relief certainly would not have been so "reasonably probable" as to show prejudice under the Sixth Amendment. *Lafler*, 556 U.S. at 164.

## IV.    CONCLUSION

For the above-stated reasons, the Court will **DENY** Williams's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.

In addition to deciding that issue, though, the Court must once again say a few words about the conduct of the assigned Assistant United States Attorney (AUSA) in this case. As was discussed above, the Court discovered that the assigned AUSA falsely represented that Williams had waived the right to collateral attacks based on ineffective assistance of counsel—a right that Williams had expressly *reserved* in the very plea agreement the assigned AUSA purported to quote. *See* Mem. Order at 1–2, ECF No. 162. But the lawyer for the government went further. His "quotation" of the plea agreement specifically *deleted* that express reservation and replaced it with an ellipsis. *Id.* at 2. The Court ordered the assigned AUSA to show cause for that "disturb[ing]" omission, and it ordered the clerk of court to provide a copy of that Order to the United States Attorney for the Western District of Texas. *Id.* The assigned AUSA claimed that the omission arose when he mistakenly used a "standard office template" that apparently contains language "designed to be used only in responses to motions that do not raise claims of ineffective assistance

of counsel." Gov't Response at 2–3, ECF No. 163. And he informed the Court that his "Office's leadership" apparently "intend[ed] to remind" other AUSAs about both the Department of Justice's policy against ineffective assistance waivers and about "the risks of using templates in court filings." *Id.* at 3. But the United States Attorney himself never communicated anything to this Court about his assistant's conduct or about the steps he would take to ensure that false assertions were no longer filed under his name in this Court. Therefore, the Court will **ORDER** the clerk of court to send a copy of this Memorandum Opinion to the Office of the Attorney General of the United States for transmittal to William Birney, Deputy Counsel for Professional Responsibility, who has agreed to undertake a review of the conduct of the U.S. Attorney's Office in this case.

the Court will **ORDER** counsel for the government to respond within fourteen (14) days of the corresponding Order's issuance with a proposed redacted version of this Memorandum Opinion that may be filed on the public docket consistent with the defendant's safety. The defendant shall file any response thereto within seven (7) days thereafter.

SIGNED this __8th__ day of February, 2021.

Royce C. Lamberth
United States District Judge